833 So.2d 393 (2002)
Ray D. WISE
v.
Laura D. WISE.
No. 02-CA-574.
Court of Appeals of Louisiana, Fifth Circuit.
November 13, 2002.
*394 Daniel W. Nodurft, Metairie, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and THOMAS F. DALEY.
SOL GOTHARD, Judge.
Defendant, Ray Wise, appeals a judgment of the trial court that granted a protective order in favor of his former wife and plaintiff herein, Laura Wise. For reasons that follow, we affirm.
The record shows the parties were divorced by decree dated September 29, 1993. There were continuing acrimonious relations between the parties that resulted in the filing of a Petition for Protective Order pursuant to the Louisiana Domestic Abuse Assistance Act, dated December 18, 2001. In that petition, Mrs. Wise alleged she was slapped, choked, shoved and stalked by Mr. Wise, and that he threatened her with bodily harm and death. Mr. Wise had been confined to prison for the previous six months for failure to pay child support, and Mrs. Wise contended that upon his release she would not be safe. A temporary restraining order was issued the same day ordering Mr. Wise to refrain from any behavior listed in the petition and from coming any closer than one-hundred yards of Mrs. Wise's residence. A hearing was set for the matter on January 10, 2002, after which the court issued the protective order as requested for a period of eighteen months. Mr. Wise appeals that judgment.
LSA-R.S. 46:2136 permits a court to grant a protective order to prevent the possibility of family violence, provided a petition is filed requesting the order and the defendant is afforded reasonable notice consistent with due process. Bays v. Bays, XXXX-XXXX (La.2/21/01), 779 So.2d 754. In the instant matter, there was a petition filed and a full hearing that afforded defendant due process. Further, the order was issued for eighteen months in accordance with the statute as revised. Thus, the only issue for our review is whether the trial court committed manifest error in granting the protective order after considering all of the testimony and evidence.
At the hearing Mrs. Wise testified that her husband had made prior threats. She also testified that Mr. Wise had spent six months in prison for failure to pay child support and he indicated to her he would extract revenge. She described prior physical violence she experienced during the marriage. She stated that Mr. Wise has hit her, put a belt around her neck and choked her. According to Mrs. Wise's testimony, Mr. Wise has "on more than one occasion" placed a plastic bag over her head, holding it there until she stopped fighting to get free and laid still, pretending to be unconscious. Mrs. Wise testified that she feared for her life since her husband was released from prison. Mrs. Wise testified that during the marriage she spent six days in the hospital recovering from a physical attack by her husband. On cross-examination, she also admitted she endured another hospital stay for threatened suicide. She also admitted *395 that, on a document she executed to report failure to pay child support, she did not report any violence. She explained that she did not wish to report the threats at that time because they were irrelevant to the issue of child support. Mrs. Wise also stated that after the divorce Mr. Wise would leave unsigned messages on her car windshield. She felt stalked by these actions, but never reported them to the police because she had no proof it was her husband who had left the notes.
The court also heard testimony from Sean Trouiet, who is both Mr. Wise's sister, and Mrs. Wise's step-sister. Ms. Trouiet testified that she has never known Ray to abuse his wife. On cross-examination, Ms. Trouiet admitted that, while she visited the Wise home on occasion, she never spent the night. She agreed that Mrs. Wise could have been terrorized and Ms. Trouiet would not know it. Ms. Trouiet stated that she wished to remain neutral and not get involved. She said, "I didn't want to be on his side or her side. I have nothing to do with this."
Janet Bradbury, Mrs. Wise's sister, testified, although the Wises lived with her for two years, Ms. Bradbury did not see any physical or verbal abuse. Ms. Bradbury also testified that she has maintained contact with both parties after the divorce. She stated that Mrs. Wise has not told her of the abuse and Mr. Wise did not make any threats toward Mrs. Wise. On cross-examination, Ms. Bradbury admitted that she and Mrs. Wise have been estranged for several years. Ms. Bradbury was married about eighteen months before trial and Mrs. Wise has never met her husband. Ms. Bradbury also admitted that she was divorced in 1987 and did not discuss the matter with Mrs. Wise.
Mr. Wise testified at the hearing. He denied any physical or verbal abuse of his wife. Further, he denied any threats of retaliation for spending six months in jail as a result of failure to pay child support. He admitted calling Mrs. Wise's home during the imprisonment, but explained it was only to speak to his daughter. He specifically denied hitting, choking, and stalking his wife. He did describe two occasions when he struck Mrs. Wise. The first was during an argument that happened while Mr. Wise was driving. He testified that Mrs. Wise struck him several times and he retaliated, hitting her on the shoulder. On a second occasion, Mr. Wise was speaking to his lawyer on the phone and Mrs. Wise became enraged and began hitting him. A fight ensued and Mr. Wise knocked Mrs. Wise to the ground, holding her legs so she could not kick him. Mr. Wise stated that he called 911 to get help, the operator told him "to get up off his wife and go outside." When the officers arrived about five minutes later he allowed Mrs. Wise to get up. He explained that he did not do so earlier because he was afraid he would be hit again. Mr. Wise also admitted he left notes on her car, along with flowers in hopes of reconciling shortly after the separation. He further stated that he left money in her car. He denied that he was stalking or threatening her.
After hearing all of the testimony, the trial judge gave extensive reasons for his decision to grant the protective order. He explained that observations of the witnesses, their demeanor and the reasonableness of what was said affected his decision. He also stated that the record corroborated Mrs. Wise's testimony of prior violence, and "I quite candidly have no doubt that what Mrs. Laura Wise says to be truth is true. I think that the stuff that happened between her and Mr. Wise did happen."
A reviewing court may not reverse a trial court's finding of fact absent manifest error or unless clearly wrong. Stobart v. *396 State of Louisiana, Though Department of Transportation and Development, 92-1328 (La.4/12/93), 617 So.2d 880. Given the above testimony and the trial court's finding of facts, we cannot find manifest error in the decision to grant the protective order. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.