Christen S. RODRIGUEZ

v.

Jonathan CLAASSEN

Christen S. Rodriguez

v.

Jonathan Claassen

NO. 2016–CA–0610, NO. 2016–CA–0611

Court of Appeal of Louisiana, Fourth Circuit.

DECEMBER 21, 2016

Allyson Tuttle, CATHOLIC CHARITIES/PROJECT SAVE, 701 Loyola Avenue, New Orleans, LA 70113, COUNSEL FOR PLAINTIFF/APPELLEE

Lakeisha N. Jefferson, JEFFERSON LAW FIRM, APLC, 4238 Poche Court West, New Orleans, LA 70129, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins)

Judge Edwin A. Lombard

This is a consolidated appeal wherein the Appellant, Jonathan Claassen, seeks review of the February 26, 2016 judgment of the district court granting the Appellee, Christen S. Rodriguez, a protective order. Finding that the district court did not abuse its discretion in granting the order, we affirm.

The parties married in August 2010, but have been physically separated since July 2015. They are the parents of one minor child, P.C.

Ms. Rodriguez filed a Petition for Protection from Abuse on December 3, 2015, Civil District Court Case No. 2015–11486. In her petition, she alleged that Mr. Claassen threatened her with bodily harm. She further alleged that the most recent incident of abuse occurred on December 2, 2015, when Ms. Rodriguez had picked-up Mr. Claassen from his home in her vehicle to bring him downtown to apply for a job. P.C. was also a passenger in the vehicle. She stated in her petition that he became upset after they began discussing their impending divorce. Mr. Claassen, she stated, began punching the windshield of her vehicle until it broke. She further related that he punched himself in the head. She alleged that both she and P.C., who was scared, tried to calm him down. She further alleged that Mr. Claassen grabbed her arm during this incident and threatened to commit suicide. She drove Mr. Claassen home after he threatened to commit suicide and called 911. She further stated that during this incident she was afraid and felt that her safety was threatened.

She further included in her petition a past incident of abuse that occurred in August 2015, approximately one month after she and P.C. had moved out of the former matrimonial domicile, where Mr. Claassen remained. She alleged that after moving out in July 2015, Mr. Claassen would harass her over the phone by calling her repeatedly and screaming at her. After a few weeks passed and Mr. Claassen's behavior was calmer, she alleged that she and P.C. visited Mr. Claassen at his home in August 2015. While there, he allegedly took her car keys and kept her in the house with him against her will for approximately an hour during which time he screamed at her, grabbed her wrists, and pushed her onto a bed and held her down. Subsequently, a Temporary Restraining Order ("TRO") was issued against Mr. Claassen. This matter was eventually dismissed as a result of Ms. Rodriguez's failure to appear.

Later in December 2015, Ms. Rodriguez filed another Petition for Protection from Abuse against Mr. Claassen, Civil District Court Case No. 2015–12100, re-raising the same allegations. The district court issued a TRO on January 6, 2016, restraining Mr. Claassen from committing further acts of abuse or threats of abuse against Ms. Rodriguez.

At the protective order hearing, the district court granted a protective order on behalf of Ms. Rodriguez and P.C. for an 18 month period. The district court further granted temporary sole custody of P.C. to Ms. Rodriguez and granted supervised visitation to Mr. Claassen upon his comple-

tion of a psychological evaluation and a 26 week batterers' intervention program.

This timely appeal by Mr. Claassen followed and was later consolidated with 2016-CA-0611. Mr. Claassen raises four assignments of error:

1. The district court erred in partially basing its ruling on an alleged threat to kill that was not raised by Ms. Rodriguez in either of her Petitions;
2. The district court erred in granting the protective order when Ms. Rodriguez did not prove by a preponderance of the evidence an immediate and present danger of domestic abuse resulting from physical abuse or any offense against her person as defined by the Criminal Code;
3. The district court erred in finding that Mr. Claassen is entitled to supervised visitation only after he completes a psychological evaluation and a batterers' intervention program; and
4. The district court erred in disallowing Mr. Claassen to present any testimony or evidence relative to custody of P.C. resulting in prejudicial evidence being entered against him.

**Standard of Review**

■ Our Court has set forth the standard of review applicable to domestic protective orders as well as to the factual findings of the district court:

An appellate court reviews domestic protective orders for abuse of discretion. *Alfonso v. Cooper*, 14–0145, p. 13 (La. App. 4 Cir. 7/16/14), 146 So.3d 796, 805.

Moreover, the standard of review applicable to fact findings of the trial court has been clearly enunciated by our Supreme Court in *Rabalais v. Nash*, 06–0999, p. 4 (La. 3/9/07), 952 So.2d 653, 657:

It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong .... To reverse a fact-finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. *Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987). Where the [fact-finder's] findings are reasonable, in light of the record reviewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court's ruling is manifestly erroneous, or clearly wrong.

*D.M.S. v. I.D.S.*, 14–0364, p. 8 (La.App. 4 Cir. 3/4/15), —— So.3d ——, 2015 WL 926777, *writ denied*, 15–0897 (La. 6/19/15), 172 So.3d 654, *reconsideration not considered*, 15–0897 (La. 8/28/15), 174 So.3d 1160.

**Failure to Plead Alleged Threat to Kill**

■ In his first assignment of error, Mr. Claassen argues that Ms. Rodriguez testified at the protective order hearing as to an alleged threat that he made against her life, but she did not include this alleged occurrence in either of her Petitions for Protection. He avers that she is precluded from testifying to this alleged event as a consequence, which the district court relied upon in finding that there had been threats made against Ms. Rodriguez's life.

Ms. Rodriguez testified at the protective order hearing that in July 2015, Mr. Claassen grabbed her arm and told her he was going to kill her. However, she failed to mention that this alleged incident occurred

in either of her Petitions. Mr. Claassen further avers that plaintiffs completing the Petition for Protection from Abuse form are asked, in paragraph 8(b), to specify details of the most recent incident of abuse as well as all "past incidents" of abuse. Ms. Rodriguez, he argues, did not include in her Petition any allegations that he threatened her life. Additionally, he avers that she testified that he did not verbally threaten to harm her during the aforementioned December 2015 incident.

Mr. Claassen maintains that pursuant to La. Rev. Stat. 46:2136(B)(2) a district court may grant a protective order under the Domestic Abuse Statutes if "[r]reasonable notice and opportunity to be heard is given to the person against whom the order is sought sufficient to protect that person's right to due process." He relies upon the Supreme Court's holding in *Bays v. Bays*, 00–1727 (La. 2/21/01), 779 So.2d 754, 756 and its interpretation of La. Rev. Stat. 46:2134 to bolster his argument.

Louisiana Rev. Stat. 46:2134 (A), entitled *Petition*, provides the basic requirements of a Petition for Domestic Abuse Assistance:

A.  A petition filed under the provisions of this Part shall contain the following:

(1)  The name of each petitioner and each person on whose behalf the petition is filed, and the name, address, and parish of residence of each individual alleged to have committed abuse, if known; if the petition is being filed on behalf of a child or person alleged to be incompetent, the relationship between that person and the petitioner.

(2)  The facts and circumstances concerning the alleged abuse.

(3)  The relationship between each petitioner and each individual alleged to have committed abuse.

(4)  A request for one or more protective orders.

Mr. Claassen avers that our Supreme Court has explained that the Legislature's requirement that a petition must detail the facts and circumstances of alleged abuse is to ensure that a defendant's due process rights are upheld.

The petition must detail the facts and circumstances concerning the alleged abuse. La. Rev. Stat. 46:2134. By requiring the party seeking a protective order to file a petition specifying the allegations of abuse, the legislature has ensured that a defendant's Constitutional due process rights, particularly the right of reasonable notice, will be observed.

*Bays*, 00–1727, p. 6, 779 So.2d at 758.

Mr. Claassen contends that Ms. Rodriguez deprived him of having reasonable notice of the allegation that he threatened her life as he was unable to defend himself against unpled allegations. He avers that as a result of her raising such a claim for the first time at the show-cause hearing, he was unprepared to refute this claim. He maintains that he should not be penalized as a consequence of her failure to comply with statutory pleading requirements. He points out that in addition to failing to raise this threat in either of her Petitions, she further failed to amend her pleadings to include this allegation despite having ample time to do so. Thus, he argues that the trial court erred in allowing her to testify as to alleged threats that were not plead and considering said testimony in reaching its ruling.

We find Mr. Claassen's argument to be without merit for two reasons. First, our review of the record reveals that his counsel did not timely object when Ms. Rodriguez testified as to his alleged threat on her life. Furthermore, as the Appellant

notes, counsel for Mr. Claassen further questioned Ms. Rodriguez about the alleged threat to her life on cross-examination. Failure to object deprives the district court of the opportunity to correct a contested ruling and constitutes waiver of the issue on appeal. *Martin v. Martin*, 44,020, p. 5 (La.App. 2 Cir. 12/3/08), 3 So.3d 512, 515. Thus, Mr. Claassen is precluded from raising this issue for the first time on appeal.

Additionally, we find his reliance upon *Bays* to be misplaced as it is factually and procedurally distinguishable from the instant matter. In *Bays*, an ex-husband, filed a petition for protective order against his ex-wife, who neither filed an answer nor any pleadings or motions. *Bays*, 00–1727, p. 2, 779 So.2d at 756.

At the hearing, both parties testified as well as their teenage daughter, whose testimony included a recount of "physical abuse directed toward her by plaintiff [ex-husband]." The district court issued a protective order against him as well as his ex-wife. The ex-husband appealed the judgment to the First Circuit, which affirmed the judgment. The ex-husband then sought *certiorari* relief from our Supreme Court. *Id.*, 00–1727, p. 3, 779 So.2d at 756.

Finding that the ex-husband did not have reasonable notice or a meaningful opportunity to be heard, the Supreme Court reversed the judgment holding that the ex-husband's due process rights were violated. The Supreme Court explained that it granted *certiorari* to determine whether the district court was vested with authority to issue a protective order against the ex-husband as no petition had been filed by the defendant ex-wife seeking such relief. The Supreme Court reasoned that the ex-husband did not have reasonable notice of the allegations that were made against him at the hearing where no petition was filed against him.

The Court further explained that the ex-husband did not have a meaningful opportunity to be heard:

In this case, the only party who filed a petition specifying allegations of abuse and requesting a protective order was plaintiff. Contrary to the court of appeal's conclusion, the testimony by plaintiff's daughter and the defendant did not afford the plaintiff with reasonable notice that he could be subjected to a protective order when no petition had been filed or request made seeking a protective order against him. The only matter pending before the trial court was the plaintiff's petition for a protective order sought by plaintiff against the defendant. Plaintiff simply was not given reasonable notice of the possibility that he might be subjected to a protective order.

|8Additionally, we disagree with the court of appeal's conclusion that the plaintiff had an opportunity to be heard at the July 2, 1999 hearing because he had an opportunity to cross-examine his daughter concerning her allegations that he physically abused her. Procedural due process requires that a person be given a meaningful opportunity to be heard. At the hearing, plaintiff decided to limit the cross-examination of his daughter, so as not to traumatize her. He did not think an extensive cross-examination was necessary because he did not know that his actions were at issue. Plaintiff contended had he known that there was a possibility of a protective order being issued against him based on his daughter's testimony, he would have been prepared to cross-examine her and put on a defense. Thus, plaintiff did not have a meaningful opportunity to be heard.

The appellate court found that, based on the daughter's testimony, the trial

judge was justified in issuing a protective order against plaintiff. However, the order was not issued for the daughter's benefit. It was for the benefit of her mother. The issue before the trial judge was not a protective order being sought against plaintiff for the abuse of his daughter, the issue was whether plaintiff was entitled to a protective order against his ex-wife.

*Id.*, 00–1727, pp. 6–7, 779 So.2d at 758.

The Supreme Court in *Bays* determined that the ex-husband's due process rights were violated as he was deprived of both reasonable notice of the abuse allegations as well as a meaningful opportunity to be heard as he had no idea that "his actions were at issue." In the matter *sub judice*, however, a Petition was filed against Mr. Claassen wherein Ms. Rodriguez alleged that Mr. Claassen was both verbally and physically abusive toward her. She further alleged that she was scared of him. We find Mr. Claassen did have sufficient notice of Ms. Rodriguez's claims, albeit she did not specify the abuse to be life-threatening. This assignment is without merit.

|9**The District Court Erred in Granting the Protective Order as Ms. Rodriguez Did Not Carry Her Burden of Proof**

■ In his second assignment of error, Mr. Claassen avers that Ms. Rodriguez did not prove by a preponderance of the evidence that she suffers an immediate and present danger of abuse from Mr. Claassen sufficient to warrant a protective order.

Mr. Claassen contends that domestic abuse, as defined by La. Rev. Stat. 46:2132(3), encompasses physical or sexual abuse and any offense against the person. Moreover, La. Rev. Stats. 46:2135[1] and 2136[2] require that "good cause" must be

---

1. La. Rev. Stat. 46:2135 (A) provides in pertinent part:
    A. Upon good cause shown in an ex parte proceeding, the court may enter a temporary restraining order, without bond, as it deems necessary to protect from abuse the petitioner, any minor children, or any person alleged to be an incompetent. Any person who shows immediate and present danger of abuse shall constitute good cause for purposes of this Subsection. The court shall consider any and all past history of abuse, or threats thereof, in determining the existence of an immediate and present danger of abuse. There is no requirement that the abuse itself be recent, immediate, or present. The order may include but is not limited to the following:
    (1) Directing the defendant to refrain from abusing, harassing, or interfering with the person or employment or going near the residence or place of employment of the petitioner, the minor children, or any person alleged to be incompetent, on whose behalf a petition was filed under this Part.

2. Moreover, La. Rev. Stat. 46:2136 provides in pertinent part:

    A. The court may grant any protective order or approve any consent agreement to bring about a cessation of domestic abuse as defined in R.S. 46:2132(3), or the threat or danger thereof, to a party, any minor children, or any person alleged to be incompetent, which relief may include but is not limited to:
    (1) Granting the relief enumerated in R.S. 46:2135.
    (2) Where there is a duty to support a party, any minor children, or any person alleged to be incompetent living in the residence or household, ordering payment of temporary support or provision of suitable housing for them, or granting possession to the petitioner of the residence or household to the exclusion of the defendant, by evicting the defendant or restoring possession to the petitioner where the residence is solely owned by the defendant and the petitioner has been awarded the temporary custody of the minor children born of the parties.
    (3) Awarding temporary custody of or establishing temporary visitation rights and conditions with regard to any minor children or person alleged to be incompetent.

shown for the issuance of a protective order, and the petitioner must prove the allegations of abuse by a preponderance of the evidence. Courts may grant such an order to bring about a cessation of abuse of a party. La. Rev. Stat. 46:2136.

He avers that his interactions with Ms. Rodriguez do not meet this definition as the worst of his actions involved his own self-abuse and threats to his own life. He further contends that after the issuance of the TRO, Ms. Rodriguez has not shown any fear of him as evidenced by their continuous contact through text messages and phone calls. He also maintains that she drove P.C. to his home and/or has driven him to her home to visit P.C. He further relies upon Ms. Rodriguez's testimony that she has contacted him numerous times since the TRO was issued.

As previously stated, we review the issuance of domestic protective orders for an abuse of discretion. The Legislature has defined domestic abuse as including, "but not being limited to, physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another." La. Rev. Stat. 46:2132(3). "Pursuant to La. R.S. 46:2136(A), the court may grant a protective order to bring about a cessation of abuse of a party or any minor children." *Teague v. Teague*, 44,005, p. 12 (La.App. 2 Cir. 11/25/08), 999 So.2d 86, 94.

Ms. Rodriguez testified to Mr. Claassen assaulting her when he threatened her life as well as committing various batteries and falsely imprisoning her.[3] We agree that these offenses fall within the definition of domestic abuse, which encompasses any offense against the person, including criminal offenses. *See* La. Rev. Stat. 46:2132(3).

During the proceedings, the district court heard testimony from both parties regarding Mr. Claassen's abusive behavior. Both parties testified that in December 2015, Mr. Claassen became violent while riding in a car with Ms. Rodriguez and their minor child. Mr. Claassen testified that he did break the car windshield and

(4)(a) Ordering a medical evaluation of the defendant or the abused person, or both, to be conducted by an independent court-appointed evaluator who qualifies as an expert in the field of domestic abuse. The evaluation shall be conducted by a person who has no family, financial, or prior medical relationship with the defendant or abused person, or their attorneys of record.
(b) If the medical evaluation is ordered for both the defendant and abused person, two separate evaluators shall be appointed.
(c) After an independent medical evaluation has been completed and a report issued, the court may order counseling or other medical treatment as deemed appropriate.

3. An "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. Rev. Stat. 14:36. His alleged threat

to kill her after she left him in July 2015, Ms. Rodriguez argues, constitutes an assault as Mr. Claassen intentionally put her in reasonable apprehension of being killed. *Shirley v. Shirley*, 47,442 (La.App. 2 Cir. 10/10/12), 107 So.3d 99. She also points out that whereas "(w)ords alone may not be sufficient to constitute an assault, ... threats coupled with the present ability to carry out the threats are sufficient when one is placed in reasonable apprehension of receiving an injury." *Castiglione v. Galpin*, 325 So.2d 725, 726 (La. App. 4th Cir. 1976).

A battery is defined as "the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La. Rev. Stat. 14:33. Lastly, "false imprisonment" is the "the intentional confinement or detention of another without his consent and without proper legal authority." La. Rev. Stat. 14:46.

that his son was riding in the car when he did so. Both parties also testified that Mr. Claassen threatened to kill himself. Ms. Rodriquez further recounted that during this incident Mr. Claassen grabbed her arm; thus, committing a battery.

Mr. Claassen testified that Ms. Rodriguez called the police on the same day and that he was taken to a hospital where he spoke with a psychiatrist. He also met with a counselor, whom he was supposed to continue meeting, but did not. He also explained that he has twice threatened to take his life in conversations with Ms. Rodriguez.

Mr. Claassen further corroborated Ms. Rodriguez's testimony that in another incident he took her car keys away from her while she and their child were visiting him at his apartment. Ms. Rodriguez testified that while she was prevented from leaving, Mr. Claassen also grabbed her wrists and held her down on his bed. Again, this was a commission of a battery as well as false imprisonment and assault upon Ms. Rodriguez.[4] Moreover, Mr. Claassen admitted that he has yelled and cursed at Ms. Rodriguez.

We do not find that the district court abused its discretion in issuing a protective order considering his past behavior and the numerous criminal offenses that he has committed against Ms. Rodriguez, in accordance with La. Rev. Stat. 46:2132(3). This assignment of error is without merit.

**District Court Errors Regarding Supervised Visitation and Exclusion of Relevant Custody Evidence and Testimony**

■ In Mr. Claassen's remaining assignments of error, he challenges the manner in which the district court granted relief to Ms. Rodriguez. Specifically, he argues that his supervised visitation with P.C. should not be delayed until he completes a psychological evaluation and a batterers' intervention program. Additionally, he contends that the district court did not allow his counsel to present additional evidence regarding the parties' ability to co-parent P.C. and cooperate because Ms. Rodriguez initially only sought unsupervised visitation. However, during closing arguments, Ms. Rodriguez instead requested supervised visitation.

First, Mr. Claassen argues that he should not be prevented from having visitation with P.C. until after he completes a psychological evaluation and a batterers' program because he has never presented a threat of harm to his minor child nor was this alleged. He further argues that, by comparison, even men who have sexually abused their children were granted visitation, including unsupervised visitation, with their minor children whereas he presents no threat at all to P.C. *See C.L.S. v. G.J.S.*, 05–1419 (La.App. 4 Cir. 3/7/07), 953 So.2d 1025; *State Dep't of Social Services In re A.D.*, 628 So.2d 1288 (La.App. 3rd Cir. 1993). He further points out that Ms. Rodriguez had requested unsupervised visitation at the commencement of the proceedings.

■ Regarding the introduction of evidence involving the custody of P.C., Mr. Claassen avers that the district court erred in precluding him from presenting testimony or evidence relative to custody of the minor child, such as the parties' ability to co-parent. Consequently, he argues, only prejudicial evidence was entered against him. The district court's rationale for disallowing the introduction of additional evidence or further testimony to be adduced was that Ms. Rodriguez had not alleged that he was abusive toward their minor child and that, at that junc-

4. See *supra* footnote 3.

ture, she was willing to allow Mr. Claassen to have unsupervised visitation.

Mr. Claassen argues that her late change in requesting supervised visitation prevented him from presenting evidence that the parties had successfully been co-parenting, and managing their physical custody and visitation schedule. He further asserts that counsel for Ms. Rodriguez was also permitted to ask leading questions and to elicit speculative testimony as well as testimony based on her opinion. The introduction of such testimony, he contends, led to the introduction of evidence that was more prejudicial than probative.

As previously stated, La. Rev. Stat. 46:2136 provides that a court may grant relief that is not enumerated within the statute. Thus, the district court has wide latitude in determining the relief granted to a domestic abuse petitioner. "The purpose behind this statute is to 'provide relief to victims of domestic violence by establishing "a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection." ' " *Branstetter v. Purohit*, 06–1435, p. 4 (La.App. 4 Cir. 5/2/07), 958 So.2d 740, 743 (citing *Bays*, 00–1727, p. 5, 779 So.2d at 758; La. Rev. Stat. 46:2131). Furthermore, a trial court is in the best position to ascertain the best interests of children given each unique set of circumstances. *Lawrence v. Lawrence*, 49,373, p. 7 (La.App. 2 Cir. 8/13/14), 147 So.3d 821, 826.

We find that the relief granted by the district court is encompassed by La. Rev. Stat. 46:2136, under the facts of this case. The district court did not abuse its discretion in restricting Mr. Claassen's supervised visitation to commence after he completed a psychological evaluation and a batterers' program, considering the testimony adduced at trial. Both parties testified as to Mr. Claassen breaking a window

shield, threatening to take his life, and physically preventing Ms. Rodriguez from leaving his home. There was sufficient cause for concern about the safety of P.C. with Mr. Claassen. Also, Mr. Claassen testified that although he was taken to a hospital after the December 2015 incident, and had met with a counselor once thereafter, he had not been continuing his mental health treatment.

Moreover, we find that Mr. Claassen's reliance upon cases wherein fathers who had sexually abused their children were granted visitation to be unrelated to this matter where Mr. Claassen's behavior presented a physical threat of harm to himself and others.

Lastly, with regard to Mr. Claassen's argument that the district court improperly excluded evidence favorable to him, in *D.M.S.*, 14–0364, p. 8, —— So.3d at ——, 2015 WL 926777, * 17, we explained that a trial judge has vast discretion in determining how proceedings are to be conducted:

A trial judge has discretion in conducting a trial. A judge is required to do so in an orderly, expeditious manner and to control the proceedings so that justice is done. La. C.C.P. art. 1631. The judge's discretion includes the presentation of witnesses, La. C.C.P. art. 1632, as well as the admissibility of a witness's testimony. La. C.C.P. art. 1631. The trial judge has great discretion in the manner in which the proceedings are conducted before the court, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened. *Cooper v. Lacorte*, 99–1726, p. 3 (La. App. 4 Cir. 5/17/00), 775 So.2d 4, 7.

Mr. Claassen is correct that it was not until closing arguments that Ms. Rodriguez requested that he receive supervised visitation of P.C. Thus, the district court, like Mr. Claassen, had no idea that Ms.

Rodriguez was going to change her request at the time it made admissibility rulings during hearing.

Additionally, counsel for Ms. Rodriguez explained during her closing argument that Ms. Rodriguez changed her request from unsupervised to supervised visitation based on Mr. Claassen's testimony that he had not obtained substantive mental health treatment for his issues. Counsel further explained that Ms. Rodriguez did not believe that, in light of his testimony, unsupervised visitation would be in the best interest of their child and the safety of their child until Mr. Claassen received a mental health evaluation and more treatment. The change in the visitation request was clearly not arbitrary. The trial judge further stated that even in the absence of Ms. Rodriguez changing her request, the court would have only granted Mr. Claassen supervised visitation.

Finally, Mr. Claassen did not object to these rulings by the district court to preserve this issue for appeal. Nevertheless, we do not find that the district court abused its discretion in its evidentiary rulings. These assignments of error are without merit.

### DECREE

The February 26, 2016 judgment of the district court, granting Christen S. Rodriguez a protective order, is affirmed.

**AFFIRMED**